UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

RAYMOND COLEMAN,

    Movant,

v.

                                                       Case No. 1:13-CV-3
                                                     (Criminal Case No. 1:11-CR-276-2)

UNITED STATES OF AMERICA,

                                                     HON. GORDON J. QUIST

    Respondent.

_____/

## OPINION

Movant, Raymond Coleman, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Government has filed a response. After reviewing the motion, response, and pertinent portions of the record, the Court concludes that Coleman is not entitled to relief, and his motion will be denied.

### I. PROCEDURAL HISTORY

On September 28, 2011, Coleman was indicted on 14 counts of wire fraud, 12 counts of mail fraud, two counts of aggravated identity theft, and one count of conspiracy related to a scheme to receive federal financial student aid from the United States Department of Education and other college programs in the names of individuals who did not intend to—and did not in fact—attend those college programs. Coleman entered a plea agreement by which he agreed to plead guilty to one count of conspiracy to commit mail fraud and one count of aggravated identity theft. At the February 21, 2012 change of plea hearing, Coleman entered a guilty plea. However, when the Court inquired into the basis for the plea, the Court found that Coleman did not state sufficient facts to support a conspiracy charge.

On February 24, 2012, the government filed a felony information against Coleman, alleging one count of wire fraud and one count of aggravated identity theft. On February 27, 2012, Coleman pled guilty to both counts, and the Court took the second amended plea agreement under advisement pending sentencing. On July 25, 2012, the Court sentenced Coleman to 65 months' imprisonment, three years' supervised release, and restitution of $19,672.00. Coleman made several objections to the presentence report (PSR). First, Coleman objected to a 14-level enhancement for the total intended loss attributable to Coleman, which was calculated as $594,650.00—more than $400,000.00 but less than $1,000,000.00. *See* United States Sentencing Guidelines § 2B1.1(b)(1)(H). The Court sustained the objection at sentencing, instead applying a four-level enhancement on the basis of actual loss. Second, Coleman objected to three two-point enhancements related to the number of victims, victim vulnerability, and the use of a charitable organization. However, Defendant later withdrew two of the three objections. The Court found a sufficient factual basis to support two of the three enhancements, but sustained Coleman's objection to the vulnerable victim enhancement. Altogether, after the Court sustained Coleman's objections, the offense level originally calculated in the PSR as 24 was reduced to 13. Combined with Coleman's criminal history category of VI, the Court found the applicable sentencing guideline range to be 33 to 41 months' incarceration. The Court sentenced Coleman to 41 months' incarceration on Count 1 and a mandatory, consecutive term of 24 months' incarceration on Count 2, for a total of 65 months. Coleman did not appeal his conviction or sentence. Coleman filed this case on January 3, 2013.

## II. MOTION STANDARD

To obtain relief under 28 U.S.C. § 2255, a movant must show that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction

to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38, 113 S. Ct. 1710, 1721–22 (1993)). "To prevail on a § 2255 motion alleging a non-constitutional error, the petitioner must establish a fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Id.* (internal quotation marks and citations omitted).

In this case, Coleman argues that (1) he was not "brought to justice in a timely manner," (2) he received ineffective assistance of counsel, (3) the Court and prosecutor violated his Fifth Amendment right against self-incrimination, (4) the Court improperly applied two victim-related sentence enhancements, (5) the Court improperly applied a sentence enhancement for a misdemeanor assault conviction more than ten years old, (6) the Court's restitution order of $19,672.00 was inappropriate because Coleman did not receive the full amount, (7) the Court erred by not applying a "minor role" sentence reduction, and (8) the Court's judgment form states the incorrect year of offense.

As a preliminary matter, Coleman has filed two motions for appointment of counsel (docket nos. 3 & 10). "[T]he appointment of counsel in a civil case is . . . a matter within the discretion of the court. It is a privilege and not a right." *Childs v. Pellegrin,* 822 F.2d 1382, 1384 (6th Cir.1987) (internal quotation marks and citation omitted). A petitioner has no absolute right to be represented by counsel on habeas review. *See, e.g.*, *Wright v. West*, 505 U.S. 277, 293, 112 S.Ct. 2482, 2490 (1992) (citations omitted). "The burden is upon the applicant to convince the court that there is

3

sufficient merit to his claim to warrant the appointment of counsel." *McCarthy v. Weinberg,* 753 F.2d 836, 838 (10th Cir.1985) (per curiam). Some of the factors that a court should consider when deciding whether to appoint counsel include the viability or frivolity of the movant's claims, the nature and complexity of the case, and the movant's ability to present the case. *Id.* at 838–39; *see also Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985) (en banc) ("[D]istrict courts, in considering an application for appointment of counsel, should at least consider plaintiff's financial resources, the efforts of plaintiff to obtain counsel, and whether plaintiff's claim appears to have any merit.").

In this case, the relevant issues are not so complex that they have precluded Coleman from effectively presenting his case. Even assuming that Coleman's case were so complex that it inhibited his ability to present it, the Court may consider the viability of Coleman's claims. Here, only Coleman's ineffective assistance of counsel and Fifth Amendment claims are cognizable on a 28 U.S.C. § 2255 motion. *See, e.g.*, *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (requiring movant to establish a "fundamental defect which inherently results in a complete miscarriage of justice" or an error so egregious that it amounts to a violation of due process). As detailed below, the Court finds that Coleman's ineffective assistance of counsel and Fifth Amendment claims are insufficient grounds upon which to vacate, correct, or amend Coleman's sentence. Thus, exercising its discretion, the Court denies Coleman's request for appointment of counsel.

### A. Being Brought to Justice in a Timely Manner

Coleman's first ground for § 2255 relief is that he was not "brought to justice in a timely manner" because the investigators allegedly knew of Coleman's illegal actions beginning in 2007 but did not charge him until 2011. Section 2255 motions are not available to test the legality of

4

matters which should have been raised on direct appeal. *See, e.g.*, *Massaro v. United States*, 538 U.S. 500, 504–05, 123 S. Ct. 1690, 1694 (2003). *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994). A defendant's failure to present an issue on direct appeal bars him from raising the issue in his § 2255 motion, unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed. *See id.*

In this case, Coleman did not raise the issue before the district court and did not appeal. Coleman argues that he did not appeal because his counsel failed to appeal, despite that Coleman wrote two letters to his counsel requesting an appeal. However, as discussed below, Coleman's ineffective assistance of counsel claim on the basis of his attorney's failure to appeal lacks merit. Thus, Coleman has not shown good cause for failure to raise this argument.

Even if this Court were to consider the merits of Coleman's argument, Coleman has not offered a sufficient basis on which to grant a § 2255 motion. First, Coleman does not offer a specific legal basis for his claim, nor does he argue that the United States failed to charge him within the applicable five-year statute of limitations. *See* 18 U.S.C. § 3282. Second, it does not appear that Coleman's claim is of a constitutional magnitude warranting § 2255 relief. *See, e.g.*, *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999); *United States v. Williams*, 684 F.2d 296, 302 (4th Cir. 1982) ("[P]reindictment delay to allow the government to complete its investigation is not violative of due process unless it violates fundamental concepts of justice, fair play and decency. In the present case the defendant has shown no actual prejudice because of the delay.")

### B. Ineffective Assistance of Counsel

Coleman's second ground for relief is ineffective assistance of counsel. Coleman argues that (1) the district judge improperly inquired into Coleman's basis for his guilty plea—which Coleman

5

argues violates his Fifth Amendment right against self-incrimination—and (2) that his attorney should have objected to the Fifth Amendment violation. For purposes of Coleman's first ground for relief (not being brought to justice in a timely manner) and his ineffective assistance of counsel argument, Coleman argues that he failed to raise these issues on appeal because his counsel failed to file an appeal despite that Coleman wrote his counsel two letters instructing him to appeal.

The Supreme Court in *Strickland v. Washington* articulated the standard for evaluating ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *see also Ludwig v. United States*, 162 F.3d 456, 458 (6th Cir. 1998). In order to show prejudice from a failure to object, a defendant must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Stone v. United States*, 258 F. App'x 784, 787 (6th Cir. 2007) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

The two-part *Strickland* test applies to claims of ineffective assistance of counsel for failure to file a notice of appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S. Ct. 1029, 1034 (2000). "[C]ourts must 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct,' and '[j]udicial scrutiny of counsel's performance must be highly deferential.'" *Id.* (quoting *Strickland*, 466 U.S. at 689, 690, 104 S. Ct. at 2065, 2066). The *Roe* Court rejected a per se rule that an attorney must always file an appeal

6

unless specifically told otherwise. Rather, the Court divided failures to file notices of appeal into three categories: when the defendant (1) specifically requests that his counsel file an appeal, (2) explicitly instructs his counsel not to file an appeal, and (3) does not clearly convey his preference. *Id.* When a defendant specifically requests an appeal, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable," and the defendant "is entitled to [a new] appeal without showing that his appeal would likely have had merit." 528 U.S. at 477, 120 S. Ct. at 1035 (internal citation and quotation marks omitted). When a defendant expressly instructs his counsel not to file an appeal, the defendant has no claim of ineffective assistance of counsel. *Id.* When a defendant does not clearly convey his preference, the Supreme Court looks to whether counsel "consulted" with the defendant about the benefits and drawbacks of bringing an appeal. *Id.* at 478, 120 S. Ct. at 1035. Consultation occurs when the attorney "advis[es] the defendant about the advantages and disadvantages of taking an appeal, and mak[es] a reasonable effort to discover the defendant's wishes." *Id.* If consultation has occurred, then "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* at 478, 120 S. Ct. at 1036. If, on the other hand, counsel failed to consult with his client, then the court must address whether the failure to consult, by itself, is indicative of deficient performance. *See id.* Even if counsel's failure to consult was deficient, the defendant "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484, 120 S. Ct. at 1038.

Regarding Coleman's Fifth Amendment argument, Coleman has not shown that his attorney's failure to object to the judge's inquiry into the factual basis for Coleman's plea was an error "so serious" that his counsel was not functioning as the "counsel guaranteed [Coleman] by the

7

Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. It is clear from the transcript that the magistrate judge conducting the change of plea hearing informed Coleman of his rights:

> THE COURT: Mr. Coleman, I'm going to be talking to you about your rights in some detail. I'll be talking to you also about what the charges are against you, what the penalties for those could be.
>
> But the first thing I do want to remind you is you still have the right to remain silent. You do not have to say anything to anyone about what you've been charged with. You don't have to say anything to me. You don't have to say anything to anyone from law enforcement or to anyone else.
>
> However, if you enter a guilty plea you'll be giving up that right because I'll be asking you what you did that makes you guilty, and I have to do that under our federal rules. It's called establishing a factual basis for your plea.
>
> So, are you willing to give up your right to remain silent today for purposes of entering a guilty plea?
>
> THE DEFENDANT: Yes, ma'am.

(Tr. of Omnibus Hearing, Docket no. 95, Page ID 439–40.) During the course of the hearing, the judge again reminded Coleman of his right to remain silent, and explicitly stated that he would "give up [his] right against self-incrimination" upon a guilty plea because the judge would be required to ask Coleman "what [Coleman] did that makes [him] guilty." (*Id.* at 448–49.) In accepting a plea agreement, a court is required to determine whether there is a sufficient factual basis to support a guilty plea. Fed. R. of Crim. P. 11(b)(3); *see also Mitchell v. United States*, 526 U.S. 314, 322, 119 S. Ct. 1307, 1312 (1999) (discussing the scope of waiver of the right against self-incrimination in the context of rule 11 plea colloquies). The Supreme Court has explicitly indicated that a defendant entering a plea agreement may still "withhold[] information by invoking the privilege against self-incrimination at a plea colloquy" but "runs the risk that the district court will find the factual basis inadequate." *Mitchell*, 526 U.S. at 324, 119 S. Ct. at 1313. By inquiring into the factual basis for Coleman's guilty plea, the Court did not violate Coleman's right against self-incrimination, and, accordingly, Coleman's counsel's failure to object was not deficient performance.

In addition, Coleman has not shown prejudice from his attorney's failure to object. Coleman has not shown that there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Coleman has conceded that the government charged him on the same factual basis in the original indictment, information that he gave to the government no later than January 27, 2010—over two years before Coleman's guilty plea.[1] (*See* Tr. of Omnibus Hearing, Docket no. 95, Page ID 467; *see also* Gibbons Decl., ¶ 8, Docket no. 8, Page ID 33–34.) As such, Coleman has not demonstrated a reasonable probability that the result of the proceeding would have been different.

Coleman also argues that his attorney was ineffective because he failed to appeal despite that Coleman allegedly wrote to his attorney two times requesting an appeal. Coleman has the burden of proving his allegation that his counsel was constitutionally ineffective by a preponderance of the evidence. *See, e.g.*, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). First, Coleman has only offered a sworn statement that he twice asked for an appeal and his attorney did not file one.[2] (Docket no. 1, Page ID 4.) The Government, however, has offered a declaration from Coleman's counsel averring that counsel met with Coleman following sentencing and discussed the prospects

---

[1] This argument addresses both Coleman's second and third grounds for his § 2255 motion. Coleman argues both that the Court and his counsel violated his Fifth Amendment right against self-incrimination by inquiring into the basis for his plea, and that the United States Attorney improperly used the information gathered during the plea colloquy to bring "another indictment" against Coleman. However, the record shows that the factual basis for the information brought by the United States shortly after the change of plea hearing at which the Court found an insufficient factual basis for the first plea agreement was the same factual basis as the original indictment. (*Compare* Indictment, Docket no. 3 *with* Information, Docket no. 60.) The Information alleges that Coleman (1) committed wire fraud by devising a scheme using wire communication in interstate commerce to obtain federal financial student aid by false and fraudulent pretenses and representations, including using personal identifiers of a deceased person, and (2) committed aggravated identity theft by knowingly using, without lawful authority, the identification of another person during and in relation to the commission of wire fraud. Counts 12 (wire fraud) and 28 (aggravated identity theft) of the Indictment allege the same facts. Moreover, as discussed above, the Court's inquiry into the factual basis of Coleman's guilty plea did not violate Coleman's Fifth Amendment right against self-incrimination. *See* Fed. R. Crim. P. 11(b)(3); *see also Mitchell*, 526 U.S. at 322, 119 S. Ct. at 1312.

[2] The end of Coleman's signed motion states, "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on 12/30/2012 (month/date/year)."

of appeal. (Gibbons Decl., ¶ 7, Docket no. 8, Page ID 31–32.) Counsel advised Coleman not to appeal because of the significant downward departure Coleman had received compared to the PSR recommendation. (*Id.* at 32.) According to counsel, Coleman affirmatively agreed with counsel's advice not to file an appeal, and explicitly instructed counsel not to file an appeal.[3] (*Id.*) Counsel did not receive any subsequent written communications from Coleman, and it is the practice of counsel's office to open every piece of mail, review it, and place it into the file into which the mail relates. (*Id.*) There is no written communication from Coleman in counsel's pertinent files. (*Id.*) Weighing Coleman's statement against his counsel's declaration, Coleman has not met his burden of establishing by a preponderance of the evidence that he instructed his counsel to file an appeal and his counsel failed to file an appeal. Moreover, it is not likely that both of Coleman's letters requesting an appeal were incorrectly delivered, which weighs against Coleman's sworn statement. Thus, Coleman has not satisfied his burden.

### C. Sentencing Calculation

Coleman also alleges that the Court made three errors in calculating his sentence. First, Coleman argues that the Court should not have applied two victim-related sentence enhancements. Second, Coleman asserts that the Court should have applied a sentence reduction for Coleman's minor role. Third, Coleman states that the Court incorrectly calculated his criminal history score by considering a misdemeanor assault that occurred over ten years prior to his sentencing.

Coleman first asserts that the only victim of his crime was the United States Department of Education. As such, Coleman argues that the Court should not have added any victim-related adjustments to his sentence calculation. Coleman's claim lacks merit. As an initial matter, Coleman

---

[3]The Court, on the record at sentencing, and after explaining to Coleman his right to an appeal, had counsel explain to Coleman that, in order to file an appeal, Coleman needed to instruct his counsel to appeal. (Sentencing Tr., Docket no. 96, Page ID 501–02.) Coleman acknowledged that he understood. (*Id.* at 502.)

cannot raise this claim in a § 2255 motion. "[O]utside of extraordinary circumstances, claims of nonconstitutional error in sentencing cannot be raised in a § 2255 motion." *United States v. McArthur*, No. 10-cv-14726, 2011 WL 2144436, at *1 (E.D. Mich. May 31, 2011) (finding that a claim that a co-defendant received a lesser sentence was not cognizable on a § 2255 motion). Second, to the extent that Coleman argues that his counsel was ineffective because he withdrew his objections to (1) a two-point enhancement for an offense involving at least 10 victims, and (2) another two-point enhancement for use of a charitable organization, Coleman's argument is unpersuasive. The record shows that the Coleman's counsel initially objected to the enhancements now challenged by Coleman. (Docket no. 79, Page ID 253–54.) However, counsel withdrew his two objections (while maintaining objections to the vulnerable victim and amount of loss enhancements) because he did not believe there was a basis for objection. (*See* Docket no. 87, Page ID 360; Gibbons Decl. ¶ 9, Docket no. 8 Page ID 34–35.) Coleman's counsel avers that he withdrew the objections with Coleman's consent. (Gibbons Decl. ¶ 9, Docket no. 8 Page ID 34.) The Court considered Coleman's remaining objections, finding a factual basis to support enhancements for the number of victims and use of a charitable organization.[4] (Sentencing Tr., Docket no. 96, Page ID 479-88.) Therefore, the record does not support that Coleman's counsel was either deficient, or that Coleman experienced prejudice—there is not a reasonable likelihood that the result of the proceeding would have been different had Coleman's counsel not withdrawn his objections to the two enhancements. Moreover, Coleman has not shown any "extraordinary circumstances" that would justify considering this sentencing argument in a § 2255 motion.

      Second, Coleman argues that the Court should have reduced his sentence because he played a "minor role" in the scheme. Specifically, Coleman argues that he should have received at least

---

[4] The Court also explicitly asked Coleman at sentencing whether Coleman had any other objections to the PSR. Coleman responded in the negative. (Sentencing Tr., Docket no. 96, Page ID 474.)

11

a two-point reduction because he was "not a leader, organizer or manager." (Docket no. 1, Page ID 15.) The Court is unpersuaded. Although the PSR states that "[t]here is no evidence Mr. Coleman held a supervisory or managerial role in the offense," at the same time, the PSR supports that Coleman had a significant role in the scheme. (*See* PSR, Docket no. 81, Page ID 292–98.) A sentence reduction for a mitigating role should be applied where a defendant "plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, Application Note 3(A). There is no evidence to support such a finding for Coleman. Moreover, Coleman has not shown any "extraordinary circumstances" that would justify considering this sentencing argument in a § 2255 motion.

Finally, Coleman argues that the Court incorrectly calculated his criminal history score by adding one point for a misdemeanor assault that occurred over ten years prior to his sentencing. However, after careful review of the PSR and sentencing calculation, it appears that Coleman is mistaken: the Court did not add one point for any misdemeanor assault. (*See* PSR, Docket no. 81, Page ID 302–07; Sentencing Tr., Docket no. 96, Page ID 489–90.) Although Coleman received three points for a 1994 assault and battery conviction and malicious destruction of property, it was a felony conviction and the Court appropriately scored it at three points. Moreover, because the Court calculated Coleman's criminal history score at 16 points, even if this Court were to remove one point, Coleman's criminal history category would still have been VI, and Coleman's sentencing guideline range would have been the same. *See* U.S.S.G. Sentencing Table (criminal history category VI for 13 or more points). Furthermore, Coleman has not shown any "extraordinary circumstances" that would justify considering this sentencing argument in a § 2255 motion.

## D. Restitution and Amount of Loss

Coleman also argues that the Court wrongly ordered Coleman to pay restitution in the amount of $19,672.00 because Coleman "did not receive" that amount. (Docket no. 1, Page ID 14.) Relatedly, Coleman challenges the four-point enhancement for amount of loss, which was based on the amount of actual loss of $19,672.00 rather than intended loss of $594,650.00. The Court sustained Coleman's objection to the attempted loss, resulting in a four-point enhancement instead of a 14-point enhancement.

Challenges to restitution are not cognizable on a § 2255 motion. *See, e.g.*, *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995) ("[A] defendant may not bring a petition for habeas corpus under 28 U.S.C. § 2255 when he is not claiming the right to be released, but challenging the imposition of a fine."); *United States v. Washington*, No. 97-2160, 1998 WL 899978, at *2 (6th Cir. Dec. 17, 1998) ("If Washington's motion is construed as brought under 18 U.S.C. § 2255, it must also fail. A challenge to restitution is not cognizable in a motion to vacate under § 2255.") Furthermore, as above, nonconstitutional challenges to a movant's sentence—in this case, the enhancement points attributable to amount of loss—are also not cognizable on a § 2255 motion. *McArthur*, 2011 WL 2144436, at *1.

Even if the Court were to address the merits of Coleman's argument, Coleman's claim lacks merit. According to Coleman's Sentencing Memorandum, "[t]he parties agree[d] that the extent of *actual* loss incurred in this offense is $19,672.00." (Sentencing Mem., Docket no. 87, Page ID 361.) Further, Coleman "agree[d] to make full restitution for the losses caused by his activities," contemplating that the amount of loss would be $19,672.00. (PSR, Docket no. 81, Page ID 291.) Coleman has not offered any evidence that he did not receive the full amount of loss, nor is the amount erroneous merely because *he* did not receive the full amount of loss when he agreed that the

13

final restitution amount of $19,672.00 reflects the actual amount of loss attributable to his crime. Therefore, the Court is unpersuaded by Coleman's argument. Furthermore, Coleman has not shown any "extraordinary circumstances" that would justify considering this sentencing argument in a § 2255 motion.

### E. Year of Offense

Finally, Coleman argues that the Court should grant his motion because the sentencing judgment lists the year of his offenses as 2009, when it should have been 2007. Although Coleman is correct about the clerical error on the judgment form, (*see* docket no. 91, Page ID 375), the error is not of a constitutional magnitude, and is therefore an insufficient basis for granting a § 2255 motion. *Cf. Griffin*, 330 F.3d at 736. Furthermore, Coleman failed to raise this issue before the district court or on appeal, so the issue is procedurally defaulted for purposes of this motion. *See Massaro*, 538 U.S. at 504–05, 123 S. Ct. at 1694.

### III. NO CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Coleman has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has considered Coleman's claim under the *Slack* standard. Under *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong." The Court finds that reasonable jurists could not find that this Court's dismissal of any of Coleman's claims was debatable or wrong. Therefore, the Court will deny Coleman a certificate of appealability.

## IV. CONCLUSION

For these reasons, Coleman's § 2255 Motion (docket no. 1) will be dismissed. In addition, the Court will deny Coleman a certificate of appealability because he has failed to make a "substantial showing of a denial of a constitutional right."

A separate order will issue.


Dated: July 15, 2013 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE